UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cedric Scott Anderson,                          Case No. 19-cv-106 (MJD/LIB)

            Plaintiff,

      v.                                          **REPORT AND RECOMMENDATION**

St. Luke's Hospital, et al.,

            Defendants.

---

      This matter came before the undersigned United States Magistrate Judge upon Defendant St. Louis County Sheriff's Department's Motion to Dismiss, [Docket No. 24]; Defendants City of Duluth, City of Duluth Police Department, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel's Motion to Dismiss, [Docket No. 30]; Defendants Gold Gross Ambulance, Johnathan Koop, and Pete Reynolds' Motion to Dismiss, [Docket No. 39]; and Defendants Johnathan Shultz and St. Luke's Hospital's Motion to Dismiss, [Docket No. 43]. The Motions were referred to the undersigned by the Honorable Michael J. Davis. (Order of Reference [Docket No. 53]). Following a hearing, the undersigned took Defendants' Motions under advisement. (Minute Entry [Docket No. 78]).

      For the reasons discussed below, it is recommended that Defendant St. Louis County Sheriff's Department's Motion to Dismiss, [Docket No. 24], be **GRANTED**; Defendants City of Duluth, City of Duluth Police Department, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel's Motion to Dismiss, [Docket No. 30], be **GRANTED in part and DENIED in part**; Defendants Gold Gross Ambulance, Johnathan Koop, and Pete Reynolds' Motion to Dismiss,

[Docket No. 39], be **GRANTED**; and Defendants Johnathan Shultz and St. Luke's Hospital's Motion to Dismiss, [Docket No. 43], be **GRANTED**.

## I.    Background

On January 15, 2019, Plaintiff initiated the present action by filing his Complaint. [Docket No. 1]. Plaintiffs' Complaint, [Docket No. 1], named as Defendants St. Luke's Hospital; Doctor Johnathan Shultz; the City of Duluth; the City of Duluth Police Department; City of Duluth Police Officers Gayle Holton,[1] Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel;[2] the St. Louis County Sheriff's Department's; Gold Gross Ambulance; Pete Reynolds; and Johnathan Koop. (Compl. [Docket No. 1]). Plaintiff purports to sue the individually named Defendants in their individual and official capacities. (Id.).

According to the Complaint, in the early morning hours of March 5, 2013, Plaintiff was at his residence watching television when he heard on his "cellphone scanner app that police were being dispatched to his residence" due to a "report of a possible fight" so "he got fully dressed wearing pants, [a] T-Shirt and shoes." (Id.). "[O]nce dressed he exited out the back of his residence to 7th Street to wait for [the] police to arrive." (Id.).

---

[1] The Court is aware that on October 7, 2019, Defendant Holton's counsel filed a "Suggestion of Death" indicating that Defendant Holton had died on September 22, 2019. (Statement of Death [Docket No. 80]). The death of Defendant Holton does not alter the Court's current analysis. Rather, the Statement of Death is merely the filing which triggers the window of time in which the successor or representative must be substituted. See, Fed. R. Civ. P. 25; Lundak v. Nyseth, No. 4-cv-4297 (JRT/FLN), 2005 WL 2216313, at *2 (D. Minn. Sept. 12, 2005).
[2] In his Complaint, Plaintiff also refers to "Joel Olejnicak," who is alleged to be a Duluth Police Officer; however, Officer Olejnicak is not listed as a named Defendant in the present case. (See e.g., Compl., [Docket No. 1], at 1, 7). Because Officer Olejnicak is not listed as a Defendant, the Court will not discuss Plaintiff's Complaint as raising any claims against Officer Olejnicak. See, Fed R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."). Officer Olejnicak's designation as a non-party is supported by other basis as well. For example, in the City of Duluth's memorandum in support of its Motion to Dismiss, the City of Duluth notes that "Olejnicak is . . . not a party to this action." (Defs.' Mem., [Docket No. 32], at 2 n.2). In his response to that memorandum, Plaintiff does not assert that Officer Olejnicak is a party to the present action. (See, Plf.'s Mem. [Docket No. 68]). Further, when Plaintiff requested "Summonses" to be issued to the parties, Plaintiff did not request a "Summons" be issued in Officer Olejnicak's name. (See, Summons Issued [Docket Nos. 4, 5]).

Plaintiff alleges that he exited his residence to meet police officers. (Id.). Plaintiff alleges he waited near the intersection of Mesaba Avenue and 7th Street. (Id.). Plaintiff also alleges that "he was not on any drugs or under the influence of any alcoholic beverages; he smoked a marijuana cigarette earlier that evening." (Id. at 6).

Plaintiff asserts that he was waiting on the curb of 7th Street when Defendant Sergeant Gayle Holton arrived, exited his vehicle, instructed Plaintiff to "get on the ground." (Id.). Plaintiff complied with Defendant Holton's instructions; however, Defendant Holton then tased Plaintiff "without warning." (Id.). Plaintiff alleges that due to the taser "strikes he removed all of his clothing in [an] attempt to remove the Taser barbs from his skin as he was in fear for his life and safety due to repeated Taser strikes." (Id.). Plaintiff alleges that despite the "below freezing" temperatures, the officers on the scene allowed him "to wander around the intersection of 7th Street and Mesaba naked screaming in pain and in shock due to the repeated Taser strikes." (Id.). During this interaction, Plaintiff alleges that "several Duluth Police" officers, including Officers Sackette, Bellows, Verhel, Josephson, Graves, Nordskog, Ring, and Holton, "were standing by a Duluth police cruiser with the rear door open telling [him] to get in"; however, "he believed if he were to have entered the backseat he would have been Tased to death in the backseat of the police cruiser." (Id. at 4, 6–7).

Plaintiff further alleges that "after he refused to enter the backseat of the . . . police cruiser he was Tased again and recalls bouncing all down the side of the police cruiser to the front push bar where he was then taken to the ground where he experienced a severe pain to his rectal area" and "lost consciousness." (Id. at 7). Plaintiff alleges that, at some unspecified time, he was tased "in his back, chest, and feet." (Id.).

3

Plaintiff was then transported to St. Luke's Hospital. (See, Id. at 7–9). According to the Complaint, it is unclear to Plaintiff if he was transported to the hospital in a police squad car or an ambulance. (See, Id.). Upon arriving at St. Luke's Hospital, it was reported that "Plaintiff was reaching for his rectal area and that an anal exam was performed and six one hundred dollar bills and a wrapper were removed from Plaintiff's rectum." (Id. at 8). Plaintiff alleges that the officer who accompanied him the St. Luke's Hospital reported that he was "high on bath salts and synthetic marijuana." (Id. at 10). Plaintiff alleges he tested negative for non-synthetic drugs on March 5, 2013. (Id.).

Plaintiff further alleges that on March 6, 2013, St. Luke's Hospital filed a Petition for Judicial Commitment based on suspected synthetic drug abuse. (Id. at 13). That Petition was denied, and on March 7, 2013, Plaintiff was placed on a 72-hour emergency hospitalization hold upon which he was transferred to the Mental Health Unit. (Id.).

Based on the foregoing allegations in the Complaint, Plaintiff raises eight claims. In Count 1, pursuant to 42 U.S.C. § 1983, Plaintiff alleges all Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights through the use of excessive force. (Compl., [Docket No. 1], at 21). In Count 2, Plaintiff alleges that Defendant Police Officers Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel "used cruel and unusual punishment" by tasing Plaintiff multiple times in violation of the Plaintiff's Eighth Amendment rights. (Id. at 22). At Count 3, pursuant to 42 U.S.C. § 1983, Plaintiff alleges a Monell[3] claim against the City of Duluth "because they train officers [to] use Taser this way." (Compl., [Docket No. 1], at 22–23).[4] At Count 4, again pursuant to 42

---

[3] Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).
[4] Plaintiff's Complaint actually contains two claims labelled as "Count Three," and they are both Monell claims against the City of Duluth based on the same conduct. (See, Id. at 22–23). For the purposes of the present Motions, the Court treats the two sections labelled "Count Three" as one claim.

U.S.C. § 1983, Plaintiff alleges a <u>Monell</u> claim against St. Luke's Hospital based on the assertion that "St. Luke's Hospital condoned, ratified, approved and/or otherwise acquiesced in the use of excessive force against and improper restrain of individuals including Plaintiff" based on "customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that used on and directly resulting in Plaintiff's injuries." (Compl., [Docket No. 1], at 24). At Count 5, Plaintiff alleges a <u>Monell</u> claim against the St. Louis County Sheriff's Department. (Compl., [Docket No. 1], at 24–25). In Count 6, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff alleges that Defendants collectively conspired to deprive him "of his civil rights by using unnecessary and excessive force with Tasers multiple times on Plaintiff's body, unreasonably restraining [him] in the form of both chemical and physical restraints, false[ly] imprison[ing him,] and planting . . . false evidence inside [his] rectum." (Compl., [Docket No. 1], at 25–26). At Count 7, Plaintiff alleges that all "Defendants violated Plaintiff's Fourteen Amendment Rights by acting in concert to use force or show of authority" to falsely imprison Plaintiff. (Compl., [Docket No. 1], at 26–27). Finally, at Count 8, Plaintiff alleges St. Luke's Hospital violated his Fourteenth Amendment rights by falsely imprisoning him after he demanded to be permitted to leave. (Compl., [Docket No. 1], at 27).

On May 22, 2019, Defendants filed their respective Motions to Dismiss. [Docket Nos. 24, 30, 39, 43]. The City of Duluth Defendants, in support of their Motion to Dismiss, submitted several exhibits including the City of Duluth's responses to Plaintiff's request for information prior to the initiation of the present litigation; the police reports, evidence logs, and photographs regarding the incident underlying the present litigation; and the two dash camera videos from squad cars which responded to the March 5, 2013, incident described in Plaintiff's Complaint.[5]

---

[5] Specifically, the City of Duluth Defendants submitted a copy of the video from the dashcam of Officer Josephson, [Docket No. 34-1], as well as, a copy of the video from the dashcam of Officer Sackett. [Docket No. 34-2].These

Dashcam videos show that at approximately 1:03 a.m., on March 5, 2013, Officer Sackette begins responding to the scene. (Squad Video 2, [Docket No. 34-2], Exhibit I at 01:03–1:09). During the time Officer Sackette is responding to the scene, Officer Holton[6] can be heard over the radio informing other Officers that he had encountered "a naked guy laying on the ground on seventh street just up Mesaba." (Id.). Then Officer Holton said he was "not getting out of [his] car until [Plaintiff] gets away from it." (Id.). A female Officer can be heard on the radio verifying that

---

dashcam videos were submitted conventionally to the Court. The docket entry referenced here operate as placeholders pursuant to practice in this District. Generally, in evaluating a complaint in a motion to dismiss pursuant to Rule 12(b)(6), materials outside the pleadings cannot be considered. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079). A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." McHenry v. City of Ottawa, Kansas, No. 16-cv-2736 (DDC/JPO), 2017 WL 4269903, at *3 (D. Kan. Sept. 26, 2017); see, Alvarado v. KOB–TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009); Scott v. Harris, 550 U.S. 372, 380 (2007). Other Courts have interpreted this line of cases to hold that in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider video evidence presented by the moving party where the video evidence depicts the incidents described in the complaint if that incident is central to the complaint. See, Myers v. Brewer, No. 17-cv-2682, 2018 WL 3145401, at *1 (D. Kan. June 27, 2018) ("The court sees no difference between considering documents referenced in the complaint and considering video and audio referenced in the complaint."), aff'd, 773 F. App'x 1032 (10th Cir. 2019); Jackson v. Gatto, No. 13-cv-02516 (CBS), 2014 WL 2743130, at *3 (D. Colo. June 17, 2014) (considering video evidence of the incident described in the complaint and declining to convert motion to dismiss into a motion for summary judgment); Hyung Seok Koh v. Graf, No. 11-cv-2605, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013) (considering video of the interrogation described in the complaint). The undersigned finds persuasive the collective reasoning of these cases. In the present case, the incident depicted in the videos submitted by the City of Duluth Defendants are central to Plaintiff's Complaint, and the videos themselves are referenced in and embraced by the Complaint itself. Further, the authenticity of the videos is not refuted, and the videos do not directly refute the allegations in Plaintiff's Complaint because the videos do not depict the entirety of the incident at issue. The videos do, however, provided much needed context to the allegations in Plaintiff's Complaint. The undersigned may, and does, consider the dashcam videos of the incident described in Plaintiff's Complaint without converting the City of Duluth Defendants' present Motion into a motion for summary judgment. The undersigned does not, however, consider the other proffered documents which were submitted in support of the City of Duluth Defendants' Motion to Dismiss, including the police reports of the individually named City of Duluth Police Officers. Although Plaintiff references those police reports in his Complaint, he specifically calls into question the veracity of those reports. Further, although Defendants attempt to present those reports as verified, authenticated reports of the incidents underlying the present action, those reports merely represent the individually named Duluth Police Officers' versions of the incident that occurred the morning of March 5, 2013. To consider, and adopt, those police reports as Defendants invite the Court to do would require the Court to weigh Defendants' version of the facts against Plaintiff's version of the facts and make several inferences in Defendants' favor. This is an action this Court will not take at this early motion to dismiss stage. Similarly, the Court will not consider the affidavits Plaintiff submits in opposition to Defendants' Motions to Dismiss. Plaintiff's affidavits largely only repeat allegations in his Complaint, however, to the extent the affidavits seek to supplement the Complaint, the Court does not consider them as they are materials outside the Complaint.

[6] The video itself does not identify the initial responding Officer as Officer Holton, however, Plaintiff alleges Officer Holton was the first Officer on the scene, and the City of Duluth Defendants corroborate that assertion.

Plaintiff was the same individual she had encountered earlier, and opining that "he must be on something." (Id.). After requesting that an ambulance be dispatched to the scene, Officer Holton then radios that Plaintiff is "running out on the plaza," and it appears that the Officer exited his patrol vehicle. (Id.).

At approximately 1:08 a.m., Officer Josephson, from a stopped position, turns her patrol vehicle towards the intersection; only one other patrol vehicle appears to be on the scene. (Squad Video 1, [Docket No. 34-1], Exhibit H at 01:07–1:09). Once the vehicle is turned toward the intersection, Plaintiff can be seen laying on the ground; Plaintiff is unclothed. (Id.). Another Officer is standing next to Plaintiff. (Id.). The Officer is not touching Plaintiff. (Id.). Plaintiff quickly rises, and he begins running across the intersection while reaching for his rectum area. (Id.). Officer Josephson begins driving her patrol vehicle closer to Plaintiff; as she gets near Plaintiff, he begins swaying on his feet and then appears to stand at attention before exiting the video. (Id.). Plaintiff can briefly be seen running across the intersection before the camera moves and Plaintiff is out of the video. (Id. at 1:09–1:11). A third patrol vehicle can be seen arriving on the scene at approximately 1:09 a.m. (Id.).

As Officer Sackette approaches the scene at approximately 1:09 a.m., Officer Holton instructs Officers to approach cautiously as it was unknown the direction Plaintiff would next run. (Squad Video 2, [Docket No. 34-2], Exhibit I at 1:09–1:11). The scene comes into view of Officer Sackette's dashcam at approximate 1:09 a.m. (Id.). As Officer Sackette approaches driving into the intersection, two Officers can be seen standing near another patrol vehicle. (Id.). Plaintiff cannot be seen as the patrol vehicle approaches. (Id.). Plaintiff quickly enters the camera's view from the left side. (Id.). Plaintiff, being followed on foot by Officers, is walking through the intersection unclothed and reaching for his rectum area. (Id.). Plaintiff then reverses direction

7

exiting the camera's view to the left while Officer Sackette uses her patrol vehicle to block the traffic lane. (Id.). Plaintiff can be heard making unintelligible yelling noises. (Id.).

Upon stopping her vehicle at approximately 1:10 a.m., Officer Sackette exits her vehicle and opens the rear door of her vehicle. (Squad Video 2, [Docket No. 34-2], Exhibit I at 1:09–1:11). Upon opening the rear door, Officer Sackette and another male Officer can be heard repeatedly shouting, "get in the car." (Id. at 1:10–1:11). Plaintiff does not comply. (Id.).

At approximately 1:11 a.m., Plaintiff can be seen running across the camera view of Officer Josephson's dashcam. (Squad Video 1, [Docket No. 34-1], Exhibit H at 1:11–1:12). Plaintiff then appears to attempt to unsuccessfully jump across the corner of the hood of Officer Josephson's patrol vehicle before exiting the camera's view to the right. (Id.). There are no Officers, or other persons, in the camera's view when Plaintiff falls across the vehicle's hood. (Id.). Plaintiff rises from the ground, and he walks back into the camera's view. (Id.). Plaintiff then faces away from the patrol vehicle, briefly sits on the front of the vehicle, waves his hand in the air, appears to yell, and then exits the camera's view to the left. (Id.).

At approximately 1:13 a.m., a male Officer can be heard on the radio inquiring as to the location of the ambulance, stating that Plaintiff was handcuffed, and stating that Plaintiff was "fighting hard." (Squad Video 2, [Docket No. 34-2], Exhibit I at 1:12–1:14). That same male Officer then requests other Officers to assist in "holding down" Plaintiff. (Id. at 1:13–1:15).

At approximately 1:17 a.m., a male Officer can be heard on the radio reporting that Plaintiff had been loaded onto the gurney, and he was being placed into the ambulance. (Squad Video 2, [Docket No. 34-2], Exhibit I at 01:17–1:18).

Plaintiff was taken to St. Luke's Hospital. (Compl., [Docket No. 1], at 8). According to Plaintiff, there is a discrepancy as to whether Plaintiff was transported to St. Luke's Hospital via

a squad car or an ambulance. (See, Id.). From the allegations in Plaintiff's Complaint it is unclear whether Plaintiff alleges he was transported to St. Luke's Hospital by ambulance or squad car. (See, Id. at 8–9).

Plaintiff was treated for his injuries at St. Luke's Hospital. (Id. at 8–13). One of the persons treating Plaintiff in the emergency room at St. Luke's Hospital was Defendant Dr. Johnathan Schultz. (Id.). Plaintiff summarily alleges that the medical records generated at St. Luke's Hospital were created in consultation with police officers. (See, Id.).

At some point between 3:24 a.m. and 4:05 a.m., a doctor from St. Luke's contacted the Duluth Police Officers[7] regarding "six one hundred dollar bills and a wrapper" or "small package of something" which had been "removed from Plaintiff's rectum." (Id. at 9, 12). Duluth Police Officers returned to St. Luke's Hospital to retrieve the "wrapper" or "small package of something"; the money was left at the hospital. (Id. at 9–12).

Plaintiff alleges he was not discharged from St. Luke's until on March 15, 2013. (Id. at 15).

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[7] It is unclear from Plaintiff's Complaint which Police Officer was actually contacted. (See, Id.).

defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see, Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

## III. Defendant St. Louis County Sheriff's Department's Motion to Dismiss. [Docket No. 24].

Defendant St. Louis County Sheriff's Department (hereinafter "Defendant Sheriff's Department") seeks an Order of this Court dismissing with prejudice Plaintiff's Complaint as alleged against Defendant Sheriff's Department. In support of its Motion, Defendant Sheriff's

Department argues that departments, offices, and other subunits of local governments, such as itself, lack the capacity to be sued. (Def.'s Mem., [Docket No. 26], at 3).

In his response, Plaintiff asserts that "Defendant makes a showing that it is a mere subdivision of St. Louis County, but that is not how the County's own organizational chart makes it out to be. The Sheriff's Office is organized under the Sheriff, an elected official. It has its own budget and is not beholden to the County, but to the Sheriff's constituents." (Plf.'s Resp., [Docket No. 67], at 2). Therefore, Plaintiff argues, it should be permitted to maintain an action against Defendant Sherriff Department. (See, Id.). Plaintiff does not cite to any legal authority to support his argument. (See, Id.).

Despite Plaintiff's assertion, Plaintiff has not provided, and this Court does not find, any authority to support his contention that Courts have relied on "organizational charts" to find that a county sheriff's office has the capacity to be sued. Rather, it is well-established in this District that sheriff's offices are not legal entities capable of being sued because they are a department of a municipal corporation. See, e.g., McKinney v. Minnesota, No. 8-cv-3769, 2008 WL 4831762, *4 (D. Minn. Nov. 3, 2008) (holding Hennepin County Sheriff's Department was not legal entity capable of being sued because it was a department of a municipal corporation); In re Scott Cty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987), aff'd sub nom. Myers v. Scott Cty., 868 F. 2d 1017 (8th Cir. 1989); Flores v. United States, No. 9-cv-838 (JMR/SRN) Report and Recommendation [Docket No. 161] (D. Minn. April 1, 2010) (holding that Ramsey County Sheriff's Department could not be sued under Minnesota state law because state law only permits actions against municipalities, for the acts of its officers, employees, and agents acting within the scope of their duties report and recommendation adopted Order [Docket No. 201] (D. Minn. Aug.

11, 2010); <u>Tisdell v. Crow Wing Cty.</u>, No. 13-cv-2531 (PJS/LIB), 2014 WL 1757929, at *4 (D. Minn. Apr. 30, 2014).

In <u>McKinney v. Minnesota</u>, for example, the plaintiff brought a 42 U.S.C. § 1983 claim against the Hennepin County Sheriff's Department. <u>McKinney v. Minnesota</u>, No. 8-cv-3769 (ADM/JSM), 2008 WL 4831762, at *4 (D. Minn. Nov. 3, 2008). The Court found that county sheriff's departments, such as Hennepin County Sheriff's Department, are not municipal corporations but rather are operating departments of municipal corporations. <u>Id.</u> Thus, the Court dismissed the plaintiff's 1983 claim, concluding that, "[b]ecause [the sheriff's department] is not a legal entity recognized by [Minnesota] law, legislation is required to enable it to sue or be sued." <u>Id.</u>

In the present case, the St. Louis County Sheriff's Department is likewise merely an operating department of the municipal political entity St. Louis County. <u>See</u>, <u>Flores v. United States</u>, No. 9-cv-838 (JMR/SRN) Report and Recommendation [Docket No. 161] (D. Minn. April 1, 2010). As such, the Court finds that Defendant St. Louis County Sheriff's Department is not a recognized legal entity, and therefore, it is not capable of being sued. <u>See, e.g.</u>, <u>McKinney</u>, 2008 WL 4831762, *4; <u>In re Scott Cty. Master Docket</u>, 672 F. Supp. at 1163 n.1; <u>Flores</u>, No. 9-cv-838 (JMR/SRN), Report and Recommendation [Docket No. 161]; <u>Tisdell</u>, 2014 WL 1757929, at *4.

Therefore, it is recommended that Defendant St. Louis County Sheriff's Department's Motion to Dismiss, [Docket No. 24], be **GRANTED.** It is further recommended that Plaintiff's Complaint as alleged against Defendant St. Louis County Sheriff's Department be **DISMISSED with prejudice**. <u>See</u>, <u>Tisdell</u>, 2014 WL 1757929, at *4; <u>Capers</u>, 2013 WL 3716644, at *1; <u>O'Keefe</u>, 2016 WL 2757695, at *4; <u>Barner</u>, 796 F.3d at 903.

## IV.    Defendant Pete Reynolds

The Court next addresses the additional threshold issue of service of process as it relates to Defendant Pete Reynolds who is alleged to be a paramedic who may have been involved in the incident underlying the present action. Defendant Reynolds moves to dismiss Plaintiff's Complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(5) for failure to serve the Complaint on him within ninety days of filing as required by Fed. R. Civ. P. 4(m). (Defs.' Mem., [Docket No. 41], at 6).

The Federal Rules of Civil Procedure require that "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). An individual may be served personally; by leaving a copy of the summons and complaint at the person's residence with a suitable person who resides there; by delivering the summons and complaint to an agent legally authorized to receive them for such purposes; or by a method approved under state law in the state where the district court is located or where the party is served. Fed. R. Civ. P. 4(e).

The Rules also provide the deadline for perfecting service of the summons and complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

"If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." Printed Media Servs., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993). "The mere fact that a defendant has received actual notice of the pending action is not sufficient if there has not been compliance with the plain requirements of Rule 4." Baden v. Craig–Hallum, Inc., 115 F.R.D. 582, 586 n. 4 (D. Minn. 1987); see, Adams v. Allied Signal Gen. Aviation Avionics, 74 F.3d 882,

885 (8th Cir. 1996) (providing that if a defendant "was improperly served, the district court lacked jurisdiction over that defendant whether or not it had actual notice of the lawsuit" (citing Printed Media Servs., 11 F.3d at 843)).

On the record now before the Court, Plaintiff has failed to file any documentation indicating that he has effectively served a summons and a copy of the Complaint on Defendant Pete Reynolds. At the August 27, 2019, Motions Hearing, Plaintiff's counsel acknowledged that Plaintiff had not served Defendant Pete Reynolds. (August 27, 2019, Motions Hearing, Digital Record at 2:17–2:19). Although Plaintiff's counsel indicated that Plaintiff was aware Defendant Pete Reynolds has moved to the State of Texas, Plaintiff's counsel failed to provide any indication that Plaintiff was continuing any attempts to serve Defendant Pete Reynolds.

Since at least May 22, 2019, Plaintiff has been aware that Defendant Pete Reynolds intended to seek dismissal of the claims against him based on the contention that he had not been properly served with a summons and a copy of the Complaint in the present action. (See, Defs.' Mot. [Docket No. 39]) (containing the service-argument discussed here and filed on May 22, 2019, with electronic service of the same being provided to Plaintiff's counsel on that same date). In the time since May 22, 2019, Plaintiff has failed to provide proof that he has properly served Defendant Pete Reynolds, failed to provide any indication that he is continuing his efforts to attempt to serve Defendant Pete Reynolds, and failed to proffer any argument as to why good cause exists to extend his time to do so.

Given that the time to serve Defendant Reynolds has long passed; that Plaintiff has declined to even argue that there is good cause for his having not done so; and that Plaintiff has not even argued that good cause exist to extend his time to do so, the Court recommends that all claims

against Defendant Pete Reynolds be **DISMISSED without prejudice** based on Plaintiff failure to serve Defendant Pete Reynolds in the time permitted by the Federal Rules of Civil Procedure.

## V.    Defendant the City of Duluth Police Department

As noted above, Plaintiff's Complaint names the City of Duluth Police Department as a Defendant in the present action. (See, Compl., [Docket No. 1], at 1). Plaintiff lists the City of Duluth Police Department as a Defendant in the caption of his Complaint, [Docket No. 1]; asserts, on the Civil Cover Sheet filed with his Complaint, that the "Duluth Police Department violated" his civil rights, [Docket No. 3]; and requested a Summons be issued to the City of Duluth Police Department. [Docket No. 4]. Plaintiff's Complaint, however, does not contain any factual allegations regarding the City of Duluth Police Department itself; rather, the factual allegations in the Complaint relate to either the City of Duluth or the individually named Duluth Police Officers. (See, Compl. [Docket No. 1]).

On May 22, 2019, in lieu of answering Plaintiff's Complaint, the City of Duluth along with City of Duluth Police Officers Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel filed their Motion to Dismiss. [Docket No. 30]. Defendant the City of Duluth Police Department was not listed as one of the Defendants bringing that Motion to Dismiss. [Docket No. 30].

Although Defendant the City of Duluth Police Department is not listed as a Defendant raising the Motion to Dismiss, in the memorandum in support of said Motion, the Assistant City Attorney defending the present action on behalf of all City of Duluth Defendants acknowledges that the City of Duluth Police Department was named as a Defendant. (Defs.' Mem., [Docket No. 32], at 2). However, the memorandum only notes that, because the City of Duluth Police Department "is not a jurisdiction person subject to suit," Defendants' counsel would "treat[] all

references to the [Duluth Police Department] in the Complaint as references to the City itself." (Id. at 2 n.2).

Defendant the City of Duluth Police Department has not entered any other response to Plaintiff's Complaint.

Although Defendants' counsel chose to refer to the City of Duluth and the Duluth Police Department collectively in its memorandum, that does not change the fact that Plaintiff's Complaint purports to sue the City of Duluth Police Department as a separate entity. Accordingly, because the Assistant City Attorney defending the present action presents a collective argument on behalf of the City of Duluth Police Department and because it has been specifically argued that the City of Duluth Police Department is an entity which is not subject to suit, (see, Defs.' Mem., [Docket No. 32], at 2 n.2), the Court will construe Defendants' counsel's assertion as an argument that the City of Duluth Police Department, as a separate Defendant, seeks dismissal from the present action based on the contention that it is not a legal entity subject to suit.

Courts, including the Eighth Circuit Court of Appeals, have consistently held that municipal police departments, as mere subdivisions of the municipality, "are not legal entities subject to suit." Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 719 (D. Minn. 2011) (citing In re Scott Cty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987); Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992); Franco v. Grant, No. 9-cv-552, 2010 WL 653855, at *6 (D. Minn. Feb 22, 2010)); see, e.g., El-Alamin v. Radke, 693 F. App'x 770, 771 (8th Cir. 2010) (unpublished); Diggs v. City of Osceola, 270 F. App'x 469 (8th Cir. 2008) (unpublished); Coleman v. Duluth Police Department, No. 16-cv-2650 (PJS/LIB), 2016 WL 4826446, at *3 (D. Minn. Nov. 16, 2016), report and recommendation adopted, 2017 WL 187143 (D. Minn. Jan. 17, 2017); In re Scott Cty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987), aff'd sub

16

nom. <u>Myers v. Scott Cty.</u>, 868 F. 2d 1017 (8th Cir. 1989). The City of Duluth Police Department is, likewise, such a department which is not a legal entity subject to suit. <u>Coleman</u>, 2016 WL 4826446, at *3. The City of Duluth Police Department is simply not a separate legal entity which may be sued. Accordingly, as a matter of law, Plaintiff may not maintain a suit against the City of Duluth Police Department as a separate entity or Defendant.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks an Order of this Court dismissing Defendant the City of Duluth Police Department from the present action, it is recommended that the Defendants' Motion to Dismiss, [Docket No. 30], be **GRANTED**. It is further recommended that Plaintiff's Complaint as alleged against Defendant City of Duluth Police Department be **DISMISSED with prejudice**. <u>See</u>, <u>Tisdell v. Crow Wing Cty.</u>, No. 13-cv-2531 (PJS/LIB), 2014 WL 1757929, at *4 (D. Minn. Apr. 30, 2014); <u>Capers v. Sarette</u>, No. 13-cv-1041 (PJS/JJG), 2013 WL 3716644, at *1 (D. Minn. July 12, 2013); <u>O'Keefe v. Beatrice Police Dep't</u>, No. 8:16-cv-29, 2016 WL 2757695, at *4 (D. Neb. May 11, 2016); <u>Barner v. Thompsons/Ctr. Arms Co., Inc.</u>, 796 F.3d 897, 903 (8th Cir. 2015).

## VI. Plaintiff's Conspiracy Claim

The undersigned next addresses Plaintiff's conspiracy claims which he alleges against all Defendants collectively.

Plaintiff purports to allege a conspiracy claim, pursuant to 42 U.S.C. § 1983, 1985, and 1986, against all Defendants.[8] Plaintiff alleges that "this conspiracy to violate [his] civil rights was carried out in part based on racial animus." (Compl., [Docket No. 1], at 26). Plaintiff alleges that "Defendants actions constituted a violation of 42 U.S.C. § 1983, 1985 and 1986 by conspiring

---

[8] The Court analyzes Plaintiff's conspiracy claim as to all Defendants except for Defendant St. Louis County Sheriff's Department, Defendant Pete Reynolds, and Defendant the City of Duluth Police Department because the Court has already independently recommended the dismissal of these three Defendants in this Report and Recommendation for jurisdictional reasons.

together" to "deprive Plaintiff, a Native American man, of his civil rights by using unnecessary and excessive force with Tasers multiple times on Plaintiff's body, unreasonably restraining . . . [him] in the form of both chemical and physical restraints, false[ly] imprison[ing him,] and planting . . . false evidence inside [his] rectum directly causing Plaintiff's" injuries. (Compl., [Docket No. 1], at 25). Plaintiff further alleges that "Defendant City of Duluth was in a fierce legal battle with the Fond-du-Lac Band of Lake Superior Chippewa over casino profits, where Plaintiff is an enrolled member." (Id.). Plaintiff asserts that "as a result of this legal battle, Duluth Police officers target Native Americans and used greater force on Native Americans than on whites" which has resulted in "Defendant Duluth" having "issues with Native Americans Community Members" because of "Duluth Police Officers use of excessive Force which has become common practice to the Police Defendants." (Id.).

To state a claim for conspiracy under 42 U.S.C. § 1983, Plaintiff must plead facts demonstrating (1) that a defendant conspired with others to deprive the plaintiff of his constitutional rights; (2) that one of the conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act caused the plaintiff harm. Askew v. Millerd, 191 F.3d 393, 957 (8th Cir. 1999); Milliman v. County of Stearns, 2013 WL 5426049, at *13 (D. Minn. Sept. 26, 2013) (citing Askew, 191 F.3d at 957)). To show that a defendant conspired with others, the complaint must include facts showing that the defendant had a "meeting of the minds" with another conspirator—that they reached an agreement to violate the plaintiff's constitutional rights. See, Burton v. St. Louis Bd. of Police Comm'rs, 731 F.3d 784, 798 (8th Cir. 2013); Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005). A conspiracy claim requires a complaint with sufficient factual allegations to suggest an agreement was made, and bare assertions of a conspiracy are not sufficient. Twombly, 550 U.S. at 556–57 (providing that parallel conduct alone does not suggest

conspiracy and conclusory allegations of agreement are not enough to support a claim); Smith v. Bacon, 699 F.2d 434, 436 (8th Cir.1983).

The elements of a conspiracy claim under § 1985 are similar. To establish a conspiracy under 42 U.S.C. § 1985, Plaintiff must plead facts demonstrating: "(1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." McDonald v. City of Saint Paul, 679 F.3d 698, 706 (8th Cir. 2012.) "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir.1989) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 102 n. 10 (1971)). To survive a motion to dismiss aimed at a conspiracy claim under § 1985, Plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Johnson v. Perdue, 862 F.3d 712, 717–18 (8th Cir. 2017) (quotation omitted).

Lastly, 42 U.S.C. § 1986 can impose liability for a defendant's knowing failure to prevent wrongful conduct proscribed by Section 1985. See, Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004). Thus, as a matter of law and logic, to state a claim under Section 1986, a plaintiff must first plead a valid Section 1985 claim. Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir. 1988).

In the present case, Plaintiff has failed to allege any specific facts whatsoever suggesting that there was any agreement made between any of the Defendants to deprive him of his civil rights. While Plaintiff alleges Defendants were in close proximity to each other—such as when the ambulance arrived on the scene where several Duluth Police Officers were located or when Duluth Police Officers were at St. Luke's Hospital—Plaintiff does not allege any specific facts

indicative of a conspiracy. Instead, Plaintiff merely makes conclusory allegations regarding a possible conspiracy.

For example, Plaintiff alleges he was "re-sedated" by hospital staff "in an attempt to block his memory of illegal Tasing . . . ." (Compl., [Docket No. 1], at 13). However, Plaintiff fails to offer any factual allegations in support of his conclusory assertion as to the reason he was allegedly "re-sedated." (See, Id.).[9]

These are the type of implausible, and merely conclusory, assertions against which Iqbal and Twombly caution this Court. These allegations fail to plausibly suggest that any Defendants had reached an agreement or had a requisite "meeting of the minds."

Therefore, to the extent any of the Defendants' Motions to Dismiss, [Docket Nos. 30, 39, 43], seek the dismissal of Plaintiff's conspiracy claim, the undersigned recommends the Motions to Dismiss, [Docket Nos. 30, 39, 43], be **GRANTED**. It is further recommended that Plaintiff's conspiracy claim be **DISMISSED without prejudice**.

## VII. City of Duluth Related Defendants' Motion to Dismiss. [Docket No. 30].

Defendants City of Duluth, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel's Motion to Dismiss, [Docket No. 30], seeks an Order of this Court dismissing Plaintiff's Complaint to the extent it asserts claims against them. In support of their Motion, the City of Duluth Defendants argue that Plaintiff's Complaint fails to state a claim against the City of Duluth or the Duluth Police Department Officers in their Official Capacities because the Complaint

---

[9] In addition to being conclusory, Plaintiff's allegations here appear to be implausible, or at a minimum contradicted, because Plaintiff also alleges that he was "re-sedated" when he "came out of sedation" because "hospital staff considered him agitated . . . ." (Id.). Plaintiff appears to inconsistently allege both that the hospital staff had a reason for "re-sedating" him, and that there was no reason other than "to block his memory of illegal Tasing" for re-sedating him (See, Id.)

insufficiently pleads an unlawful policy or custom;[10] qualified immunity shields the individually

named Duluth Police Officers from individual liability regarding Plaintiff's claims brought

pursuant to 42 U.S.C. § 1983; and Plaintiff failed to properly serve Defendants Bellows, Nordskog,

Sackette, and Simons in their individual capacities. (Defs.' Mem., [Docket No. 32], at 11–37).

As observed above, Plaintiff's Complaint alleges a <u>Monell</u>[11] claim against the City of

Duluth "because they train officers of [sic] use Taser [sic] this way." (Compl., [Docket No. 1], at

22–23).[12] Plaintiff generically alleges that the City of Duluth has had unspecified "prior issues

with the use of Tasers on suspects" which has allowed Duluth "police officers to use Tasers

indiscriminately with no fear of reprisal or discipline for their actions." (<u>Id.</u> at 22–23).

Plaintiff also alleges that Defendants the City of Duluth, as well as, Duluth Police Officers

Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven

Ring, June Sackette, Todd Simmons, and Christopher Verhel violated Plaintiff's Fourth, Fifth, and

Fourteenth Amendment rights through the Officers' use of excessive force. (Compl., [Docket No.

1], at 21). In Count 2, Plaintiff alleges that Defendants Josiah Bellows, Andrew Graves, Gayle

Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and

Christopher Verhel "used cruel and unusual punishment" by allegedly tasing Plaintiff multiple

times in violation of the Plaintiff's Eighth Amendment rights. (<u>Id.</u> at 22). At Count 7, Plaintiff

---

[10] Defendants argue that if Plaintiff fails to allege an unlawful policy or custom, then he has also failed to allege <u>any</u> claim against the individually named Duluth Police Officers Defendants in their official capacities. (<u>See</u>, Defs.' Mem., [Docket No. 32, at 11–17). This is not the case. The element of pleading an unlawful policy or custom is only required to allege a claim against a municipality. <u>See</u>, <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978). Although Defendants are correct that in a claim against a municipal officer in his or her official capacity the true party at interest is the municipality itself, that is not the same as raising a <u>Monell</u> claim or respondent superior claim as Defendants contend. In the present case, Plaintiff alleges a <u>Monell</u> claim against the City of Duluth, as well as, separate claims against the individually named Duluth Police Officers in their official capacities. The official capacity claims against the Defendant Officers are purportedly based on the alleged action of those individual Officers.

[11] <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978).

[12] As previously discussed, Plaintiff's Complaint actually contains two substantively identical <u>Monell</u> claims labelled as "Count Three" against the City of Duluth; however, for the purposes of the present Motion, the Court will treat the two claims labelled "Count Three" as one claim.

alleges that these same "Defendants violated Plaintiff's Fourteen Amendment Rights by acting in concert to use force or show of authority" to falsely imprison Plaintiff. (Compl., [Docket No. 1], at 26–27).

### A.  Service Upon Defendants Bellows, Nordskog, Sackette, and Simons

Defendant Officers Bellows, Nordskog, Sackette, and Simmons first contend that Plaintiff's claims against them in their individual capacities should be dismissed because Plaintiff has failed to effect proper service of process upon them in their individual capacities in violation of Federal Rule 12(b)(5). (Defs.' Mem., [Docket No. 32], at 24–25). Defendants Officers Bellows, Nordskog, Sackette, and Simmons contend they have only been properly served in their official capacities.

On April 11, 2019, Plaintiff caused a summons and a copy of the Complaint to be served upon the Duluth City Clerk. (Defs.' Mem., [Docket No. 32], at 9). Defendants Bellows, Nordskog, Sackette, and Simmons assert this effectuated service upon them in only their official capacities. (See, Id.). In addition to acknowledging that Defendants Bellows, Nordskog, Sackette, and Simmons have been served in at least their official capacities, Defendants' counsel informed Plaintiff's counsel that Defendants' counsel was authorized to accept service on behalf of Defendants Bellows, Nordskog, Sackette, and Simmons in their individual capacities. (See, Id.; Exhibit O [Docket No. 35-1]; Exhibit P [Docket No. 35-2]).

Although Defendants' counsel purports that Defendants Bellows, Nordskog, Sackette, and Simmons have acknowledged they have been properly served in their official capacities while simultaneously arguing that Defendants Bellows, Nordskog, Sackette, and Simmons have not been served in their individual capacities, Defendants have failed to provide this Court with any binding or persuasive authority which would authorize Defendants Bellows, Nordskog, Sackette, and

Simmons to bifurcate service in such a manner. Unlike serving the officers and employees of the United States, neither the Federal Rules of Civil Procedure nor the Minnesota Rules of Civil Procedure contemplates requiring a plaintiff to serve a defendant in his individual capacity and then having to re-serve that same individual a second time in his official capacity.

By accepting and acknowledging personal service of process in the present case in the name of Defendants City of Duluth, City of Duluth Police Department, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel, the Duluth City Attorney's Office has represented to this Court that it had authority to accept service on behalf of all these Defendants regardless of the capacity in which these Defendants were being sued.

Plaintiff's Complaint may raise claims against Defendants Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel in their individual and official capacities, however, the actual Defendants being sued are still the persons named in the Complaint. By accepting service on behalf of Defendants Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel (regardless of the capacity in which the City of Duluth believed it was accepting service), the Duluth City Attorney's Office represented that it was authorized to, and in fact did, accept service on behalf of Defendants Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel.

In short, the record presently before the Court demonstrates that Defendants City of Duluth, City of Duluth Police Department, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher

Verhel, through the Duluth City Attorney's Office, have all either been personally served or accepted services. Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks an Order of this Court dismissing individual capacity claims against Defendants Officers Bellows, Nordskog, Sackette, and Simmons based on a lack of service of process, it is recommended that the City of Duluth related Defendants' Motion to Dismiss, [Docket No. 30], be **DENIED**.[13]

### B. Plaintiff's Claim Against the City of Duluth

For each of the claims raised against it, the Defendant City of Duluth contends that Plaintiff has failed to plead the necessary elements to demonstrate liability on behalf of the City of Duluth. (Defs.' Mem., [Docket No. 32], at 12–15). Accordingly, the City of Duluth argues the claims against it should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Defs.' Mem., [Docket No. 32], at 12–15). Specifically, the City of Duluth contends that the Complaint fails to state a claim for municipal liability under 42 U.S.C. § 1983 as set forth in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

"The Supreme Court has set a high bar for establishing municipal liability under [42 U.S.C.] § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of respondeat superior. A municipality bears responsibility for its own torts, not the torts of its employees." Soltesz v. Rushmore Plaza Civic Center, 847 F.3d 941, 947 (8th Cir. 2017) (citations omitted); Schaffer v. Beringer, 842 F.3d 585, 596 (8th Cir. 2016). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691.

---

[13] The undersigned is cognizant of the fact that in the past the Minnesota Attorney General's Office and the Duluth City Attorney's Office may have been permitted to proceed under the guise that certain state or city employees could be served in one capacity while simultaneously contending they had not been served in another capacity; however, that is not the same as saying the practice is actually authorized nor is appropriate going forward. This practice ought to be avoided going forward.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)[;] (2) an unofficial "custom," <u>Id.</u>; or (3) a deliberately indifferent failure to train or supervise, <u>see City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389 (1989). Policy and custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1204 (8th Cir. 1999). Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." <u>Snider v. City of Cape Girardeau</u>, 752 F.3d 1149, 1160 (8th Cir. 2014).

<u>Malone v. Hinman</u>, 847 F.3d 949, 955 (8th Cir. 2017) (quoting <u>Corwin v. City of Independence, Mo.</u>, 829 F.3d 695, 699–700 (8th Cir. 2016)).

With regard to his claims against the City of Duluth, Plaintiff must meet the requirements set forth above in order to bring a viable claim against the City of Duluth.

In the present case, Plaintiff summarily alleges that the City of Duluth is liable under <u>Monell</u> because it "train[ed] officers of [sic] use Taser [sic] this way." (Compl., [Docket No. 1], at 22). Plaintiff generically alleges that the City of Duluth has had unspecified "prior issues with the use of Tasers on suspects" which has allowed Duluth "police officers to use Tasers indiscriminately with no fear of reprisal or discipline for their actions." (<u>Id.</u> at 22–23). Plaintiff also broadly alleges that "Defendant City of Duluth had and presently has customs, polices, practices and procedures of negligently and inadequately hiring, training, supervising and retaining staff, particularly the Police defendants" in the present case. (<u>Id.</u> at 23). Plaintiff further asserts "Defendant Duluth condoned, ratified, approved an/or otherwise acquiesced in the use of excessive force in their use of Tasers and improper restraint of individuals including Plaintiff" while it also

"had and presently have customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that use on and directly resulting in Plaintiff injuries." (Id.).

Even considering Plaintiff's Complaint as a whole, taking all factual allegations as true, construing those facts in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to specifically identify any official municipal policy which caused the alleged constitutional violations. In fact, on the face of the Complaint, Plaintiff does not even factually allege that there was any such official municipal policy.

Plaintiff does assert that "Defendant City of Duluth had and presently has customs, polices, practices and procedures of negligently and inadequately hiring, training, supervising and retaining staff, particularly the Police defendants" in the present case, and it "had and presently ha[s] customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that use on and directly resulting in Plaintiff injuries." (Compl., [Docket No. 1], at 23). However, these are nothing more than the type of formulaic recitation of the elements and legal conclusions against which the United States Supreme Court has cautioned Courts. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff also makes the conclusory allegation that "Defendant has liability under Monell . . . because they train officers of [sic] use Taser [sic] this way." (Compl., [Docket No. 1], at 22). However, nothing in this statement, nor anything else in Plaintiff's Complaint, refers to any specific policy resulting in the purported constitutional violations alleged in the Complaint. See, Hollingsworth v. City of St. Ann, 800 F.3d 985, 988 (8th Cir. 2015).

Thus, the Court finds that Plaintiff has failed to plead facts sufficient to support a plausible claim that the constitutional violations he alleges in his Complaint resulted from any official municipal policy.

Likewise, Plaintiff fails to allege facts of any specific unofficial city custom which foreseeably resulted in the alleged constitutional violations. As set forth above, in order to plead a cause of action through such an unofficial custom, Plaintiff would have to allege facts to support a plausible claim that (1) there was "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) that policymaking officials had notice of such misconduct and thereafter displayed "deliberate indifference to or tacit authorization of such conduct"; and (3) that this custom "was a moving force behind the constitutional violation" which injured Plaintiff. See, Malone, 847 F.3d at 955.

Even considering Plaintiff's Complaint as a whole, taking all factual allegations as true, construing those facts in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to plead facts sufficient to support a plausible claim that the constitutional violations he alleges in his Complaint resulted from either  an unofficial custom or a deliberately indifferent failure to train or supervise.

Plaintiff does allege that "Defendant City of Duluth had and presently has customs, polices, practices and procedures of negligently and inadequately hiring, training, supervising and retaining staff, particularly the Police defendants"; "condoned, ratified, approved an/or otherwise acquiesced in the use of excessive force in their use of Tasers and improper restraint of individuals including Plaintiff"; and had "customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that use on and directly resulting in Plaintiff injuries." (Compl., [Docket No. 1], at 23–24). Plaintiff also conclusorily alleges that "Defendants

27

had prior issues with the use of Tasers on suspects, and this practice has become common to the Defendants" which has led to Duluth Police Officers being allowed "to use Taser indiscriminately with no fear of reprisal or discipline for their actions." (Compl., [Docket No. 1], at 22–23). Here again, however, these are merely the type of formulaic recitation of the elements and legal conclusions couched as fact against which the United States Supreme Court has cautioned Courts. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Additionally, although Plaintiff asserts that "Defendants had prior issues with the use of Tasers," the only incident with tasers factually alleged in his Complaint is the single March 5, 2013, incident underlying the present case. (See, Compl. [Docket No. 1]). This factual allegation related to only the single incident in which Plaintiff was involved is insufficient to support the allegation of an unofficial policy or custom. See, Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013) (holding that a plaintiff must allege facts beyond his or her own experience); Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) (finding that an isolated instance of police misconduct does not establish a policy or custom for purposes of Section 1983).

Thus, for the reasons stated above, the Court finds that Plaintiff has failed to plead specific facts sufficient to support a plausible claim that the purported constitutional violations he alleges in his Complaint resulted from either (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks dismissal of Plaintiff's claims as alleged against the City of Duluth, the undersigned recommends the Defendants' Motion to Dismiss, [Docket No. 30], be **GRANTED**. The undersigned further recommends that Plaintiff's claims against the City of Duluth be **DISMISSED without prejudice**.

### C. Plaintiff's Claims Against Defendants Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel

As noted above, pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendant Duluth Police Officers Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights through the use of excessive force; "used cruel and unusual punishment" by tasing Plaintiff multiple times in violation of the Plaintiff's Eighth Amendment rights; and "violated Plaintiff's Fourteen Amendment Rights by acting in concert to use force or show of authority" to falsely imprison Plaintiff. (Compl., [Docket No. 1], at 26–27).

Defendants Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel contend that Plaintiff has failed to sufficiently plead any claim against them upon which relief may be granted. (Def.'s Mem., [Docket No. 32], at 16–24). To the extent the Court might find that Plaintiff has sufficiently plead any claim against them, Defendants Gayle Holton, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel further argue they are entitled to qualified immunity in their individual capacities.

To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d

1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").[14] In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. See, Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

1. **Defendants Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel**

As already noted, in order to state a claim upon which relief can be granted and thus withstand a Rule 12(b)(6) motion to dismiss such as the one presently before the Court, Plaintiff must make factual allegations in his Complaint that are sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Regarding Defendants Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel, Plaintiff's Complaint contains only the barest, generic allegations. Plaintiff fails in his Complaint to even allege any personal involvement or direct participation by Defendants Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel in the putative constitutional violations.

---

[14] Claims premised on a theory of vicarious liability do not state a claim for relief pursuant to 42 U.S.C. § 1983, Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), as the doctrine of respondeat superior does not generally apply in Section 1983 actions. Monnell v. Dep't of Soc. Servs., 436 U.S. 659, 691 (1978).

The only specific factual allegations as to any of these eight Defendants is that at approximately 1:00 a.m. on March 5, 2013, Defendants Bellows, Graves, Josephson, Nordskog, Ring, Sackette, and Verhel "were dispatched to Plaintiff's residence on report of a possible fight" and that these Defendants "encountered Plaintiff near the intersection of Mesaba Avenue and 7th Street in Duluth, Minnesota." (Compl., [Docket No. 1], at 4–5). Plaintiff does not specify the circumstances under which these Officers encountered Plaintiff; instead, he merely appears to allege that at some point during the morning of March 5, 2013, he encountered these Officers. (See, Id.). The dashcam videos discussed above make evident that the Officers did not all arrive at one point in time nor does Plaintiff appear to allege such circumstances.

Plaintiff's Complaint allege simply that "[a]ccording to Plaintiff, he was Tased in his back, chest, and feet" and that "[u]pon information and belief, in his arms and legs . . . by Duluth Police Defendants Andrew Graves, Simmons, [and] Steven Ring . . . ." (Compl., [Docket No. 1], at 7) (emphasis added). Here, Plaintiff fails to allege any specific factual allegations as to any specific action taken by any of these Defendants. Plaintiff fails to allege any factual allegation supporting his speculation that these Defendant tased him. For example, Plaintiff fails to plead when he was tased by these Defendants or the circumstances surrounding the alleged tasings. (See, Id.). Plaintiff's pure speculation does not rise past the merely conceivable threshold.

Court have routinely declined to accept as true such purported factual assertions as the foregoing when they are qualified or conditioned on the proposition that they are asserted "upon information and belief" and unsupported by any other specific factual allegations See, e.g., Vandevender v. Sass, No. 18-cv-607 (DWF/LIB), 2018 WL 6330417, at *3 (D. Minn. Dec. 4, 2018); Sherr v. HealthEast Care Sys., 262 F. Supp. 3d 869, 881 (D. Minn. 2017); Orwa A. v. Whitaker, No. 18-cv-2043 (ECT/KMM), 2018 WL 6492353, at *10 (D. Minn. Dec. 10, 2018);

Ford v. Delta Air Lines, Inc., No. 18-cv-3196 (DSD/KMM), 2019 WL 2524772, at *3 (D. Minn. June 19, 2019); Lee v. Mortg. Elec. Registration Sys., Inc., No. 13-cv-950 (JNE/JSM), 2014 WL 320422, at *8 (D. Minn. Jan. 29, 2014); Lara v. Fed. Nat. Mortg. Ass'n, No. 13-cv-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Fleming v. HSBC Fin. Corp., No. 13-cv-1039 (JNE/JJK), 2013 WL 3995614, at *1 (D. Minn. Aug. 5, 2013); Welch v. Citimortgage, Inc., No. 13-cv-1388 (JRT/JJK), 2014 WL 1048522, at *8 (D. Minn. Mar. 18, 2014). Courts have explained that assertions made solely "upon information and belief" without other factual allegations in support thereof are often based on secondhand information that the asserting party only believed to be true. Menard v. CSX Transp., Inc., 698 F.3d 40, 44 n. 5 (1st Cir. 2012); see, Pope v. Fed. Home Loan Mortg. Corp., 561 F. App'x 569, 573 (8th Cir. 2014) (favorably citing Menard v. CSX Transp., Inc., 698 F.3d 40, 44 (1st Cir. 2012)).

In the present case, Plaintiff's assertions are routinely plead as "[a]ccording to plaintiff" or "[u]pon information and belief" but are then unsupported by other specific factual assertions, and in fact, those qualified statements often conflict with other factual assertion contained in Plaintiff's Complaint. For example, Plaintiff asserts based "[u]pon information and belief" that Defendants "Andrew Graves, Todd Simmons, Steven Ring, Joel Olejnicak and Sergeant Gayle Holton" were the Officers who tased Plaintiff upon his "back, chest, and feet," as well as, "his arms and legs." (Compl., [Docket No. 1], at 7) (emphasis added). However, according to other factual allegations in his Complaint, Officer Todd Simmons is not one of the Officers dispatched to Plaintiff's residence nor one of the Officers Plaintiff encountered on March 5, 2013. (See, Id. at 4–5).

Assertions plead in such a qualified manner based "upon information and belief," such as Plaintiff does here, are merely conclusory assertions without any factual allegations to support them and are insufficient to satisfy Rule 8. See, e.g., Welch v. Citimortgage, Inc., No. 13-cv-1388

(JRT/JJK), 2014 WL 1048522, at *8 (D. Minn. Mar. 18, 2014). Likewise, such qualified and unsupported assertions are the type of speculative, implausible assertions against which the United States Supreme Court cautioned in <u>Twombly</u> and <u>Iqbal</u>. <u>See, e.g.</u>, <u>Vandevender v. Sass</u>, No. 18-cv-607 (DWF/LIB), 2018 WL 6330417, at *3 (D. Minn. Dec. 4, 2018); <u>Hood v. Fed. Home Loan Mortg. Corp.</u>, No. 13-cv-1068 (DSD/JSM), 2014 WL 1371916, at *7 (D. Minn. Apr. 8, 2014). The Court is not bound to accept such assertions as true. <u>See, e.g.</u>, <u>Vandevender v. Sass</u>, No. 18-cv-607 (DWF/LIB), 2018 WL 6330417, at *3 (D. Minn. Dec. 4, 2018); <u>Sherr v. HealthEast Care Sys.</u>, 262 F. Supp. 3d 869, 881 (D. Minn. 2017). Such allegations simply fails to raise Plaintiff's claim beyond merely conceivable to plausible.

Because Plaintiff's Complaint fails to allege any specific action as to Defendant Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel, the Complaint fails to plead "factual content that allows the court to draw the reasonable inference that" Defendant Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel "[are] liable for the misconduct alleged" in the Complaint. <u>See</u>, <u>Iqbal</u>, 556 U.S. 678–81; <u>Twombly</u>, 550 U.S. at 556–67. For the foregoing reasons, regarding Defendants Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel, Plaintiff has failed to plausibly plead or state a claim upon which relief may be granted.

Plaintiff's references to these Defendants and the Duluth Police Officer Defendants collective throughout his Complaint are generalized, vague statements which fail to raise Plaintiff's claim of these Defendant Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel's personal

involvement in any way whatsoever above the speculative level. In failing to make any specific factual allegation as to any action taken by Defendant Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, or Christopher Verhel relevant to his claims, and instead purporting to conclusory plead factual allegations regarding these Defendants as a collective, Plaintiff has failed to meet "the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that a pleading must consist only of 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Larson v. Jesson, No. 11-cv-2247 (PAM/LIB), Order, at 3 (D. Minn. Aug. 25, 2017).

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks dismissal of Plaintiff's claims as alleged against the Defendants Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel, the undersigned recommends the Defendants' Motion to Dismiss, [Docket No. 30], be **GRANTED**, and the claims against these Defendants be **DISMISSED without prejudice**.

### 2. Defendant Gayle Holton

As observed above, in order to state a claim upon which relief can be granted and thus withstand a Rule 12(b)(6) motion to dismiss such as the one presently before the Court, Plaintiff must make factual allegations in his Complaint that are sufficient to "raise a right to relief above the speculative level," and this "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Regarding Defendant Duluth Police Officer Gayle Holton, Plaintiff alleges that Officer Holton was one of the Officers "dispatched to Plaintiff's residence on report of a possible fight," and he was one of the Officers Plaintiff encountered on March 5, 2013. (Compl., [Docket No. 1], at 4–5). Plaintiff further alleges that when Officer Holton arrived on the scene, he exited his patrol

vehicle, and he instructed Plaintiff "to get on the ground." (Id. at 6). Plaintiff complied with Officer Holton's instruction. (Id.). Plaintiff alleges that while he was on the ground complying with Officer Holton's instructions, he was then tased "without warning" and "for no reason." (Id.).[15]

Based on these factual allegations and pursuant the 42 U.S.C. § 1983, Plaintiff has three remaining claims he pleads against Officer Holton: Defendant Holton violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights through the use of excessive force; Defendant Holton "used cruel and unusual punishment" by tasing Plaintiff multiple times in violation of the Plaintiff's Eighth Amendment rights; and Defendant Holton "violated Plaintiff's Fourteenth Amendment Rights" to be free from unreasonable seizure "by acting in concert to use force or show of authority" to falsely imprison Plaintiff. (Compl., [Docket No. 1], at 21–27).

### a. Excessive Force Claim

As noted above, Plaintiff alleges Defendant Holton violated Plaintiff's Fourth Amendment constitutional right to be free from excessive force. (See, Compl. [Docket No. 1]).[16] Although Plaintiff fails to specifically articulate which alleged show of force was excessive, Plaintiff appears to allege that Defendant Holton used unconstitutionally excessive force when Defendant Holton

---

[15] The Court is aware that Plaintiff's allegation that it was Officer Holton who tased him is also plead "[u]pon information and belief." (Id.). However, unlike Plaintiff's allegations regarding the other individually named Duluth Police Officer Defendants, Plaintiff allegations related to Defendant Holton are supported by other factual allegations in the Complaint, as well as, reasonable inferences which can be drawn from the face of the Complaint. Plaintiff alleges that Defendant Holton arrived on the scene without any allegations that any other Officer was then on the scene; that Defendant Holton exited his patrol vehicle; that Defendant Holton instructed Plaintiff to get on the ground; that Plaintiff complied by getting on the ground; and that Plaintiff was nonetheless then tased. It is a reasonable inference from these specific factual allegations in the Complaint to conclude that Defendant Holton was the person who tased Plaintiff because he was the only Officer alleged to be on the scene at that time.

[16] Plaintiff alleges Defendant Holton's use of excessive force violated his Fourth, Fifth, and Fourteenth Amended rights. (See, Compl., [Docket No. 1], at 21). The United States Supreme Court, however, has held that excessive force claims involving police officers should be analyzed under the Fourth Amendment's "reasonableness" standard rather than the "due process approach" under the Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); see, Saucier v. Katz, 533 U.S. 194, 204–05 (2001). Accordingly, the Court will confine its review of Plaintiff's excessive force claim to the Fourteenth Amendment.

allegedly tased plaintiff without warning while Plaintiff was on the ground complying with Defendant Holton's commands. (See, Id.).

Excessive force claims brought pursuant to 42 U.S.C. § 1983, such as Plaintiff's present claim, are analyzed as seizures under the Fourth Amendment, and thus, a reasonableness standard applies. See, Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006). "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Cook v. City of Bella Villa, 582 F. 3d 840, 849 (8th Cir. 2009) (quoting Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008)). "An officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Hollingsworth v. City of St. Ann, 800 F.3d 985, 989 (8th Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Whether an officer's use of force is "excessive" is a question of whether the force used was "objectively reasonable under the particular circumstances." Id. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing government interest at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Therefore, "[c]ircumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Henderson, 439 F.3d at 502 (citation omitted).

On the record now before the Court and pursuant to the standard by which the Court must here review Plaintiff's Complaint, the Court finds that Plaintiff has sufficiently pled an excessive

force claim, pursuant to 42 U.S.C. § 1983, upon which relief can be granted. Accepting the facts in his Complaint as true, as this Court must, Defendant Holton tased Plaintiff without warning while Plaintiff was on the ground complying with Defendant Holton's commands. Based on his Complaint, there was no basis for Defendant Holton to suspect Plaintiff had committed a crime; no basis to suspect Plaintiff was armed; and no basis to perceive Plaintiff as a threat to this officer or public safety.

Under circumstances materially similar to those alleged in Plaintiff's Complaint, Courts have found the use of force as Plaintiff alleges here to be plausibly excessive. See, e.g., Brown v. City of Golden Valley, 574 F.3d 491, 496–97 (8th Cir. 2009) (affirming denial of qualified immunity to officers who tased plaintiff, grabbed her hair, yanked her from the car when she had not engaged in a "severe or violent offense"; "posed at most a minimal safety threat"; "was not actively resisting arrest or attempting to flee"; and "did not threaten the officers, verbally or physically"); Johnson v. Carroll, 658 F.3d 819, 826–27 (8th Cir. 2011) (finding genuine issue of fact whether officers used excessive force by twice grabbing plaintiff, throwing her to the ground, and spraying her with mace despite fact she interfered with officers attempting to arrest her nephew, as she did not engage in a "severe or violent offense"; "posed at most a minimal safety threat to the officers and was not actively resisting arrest or attempting to flee"; and did not push officers or threaten them); Johnson v. Snedden, No. 10-cv-4056 (RHK/TNL), 2012 WL 264199, at *4 (D. Minn. Jan. 30, 2012) ("As for excessive force police officers may not throw to the ground and punch, kick, knee, and Taser a fully complaint individual who has committed no crime, who they have no reasons to suspect is armed, and in circumstances in which they should not perceive a threat to their safety.").

"While a jury may credit" a Defendant Officer and "disbelieve" a Plaintiff at trial, "it is not [the Court's] function to remove the credibility assessment from the jury." <u>Johnson</u>, 658 F.3d at 827 (quoting <u>Kukla v. Hulm</u>, 310 F.3d 1046, 1050 (8th Cir. 2002)). On the face of his Complaint, here at least, Plaintiff has satisfied his burden at this early pleading stage.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks dismissal of the excessive force claim against Defendant Holton, the undersigned recommends that Defendants' Motion, [Docket No. 30], be **DENIED**.[17]

### b.  Cruel and Unusual Punishment Claim

Plaintiff also alleges that Defendant Holton's use of allegedly excessive force violated Plaintiff's constitutional right to be free from cruel and unusual punishment under the Eighth Amendment. (Compl., [Docket No. 1], at 22). Although he purports to raise an Eighth Amendment claim, Plaintiff was not serving a term of imprisonment when he was tased, and thus the Eighth Amendment is not applicable to the Plaintiff's circumstances as pled in his Complaint. <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n. 40 (1977) ("the State does not acquire the power to punish with

---

[17] The Court recognizes that Defendant Holton also argues that he is entitled to qualified immunity in his individual capacity regarding Plaintiff's excessive force claim. (<u>See</u>, Defs.' Mem., [Docket No. 32], at 16–18). Defendant Holton contends the Court should consider his qualified immunity argument because the defense of qualified immunity should be resolved at the earliest possible stage of litigation. However, although the present action is only in the motion to dismiss stage, Defendant Holton's argument fails to address the fact that the issue of "qualified immunity is typically considered on motion for summary judgment and generally involves consideration of facts elicited though at least some additional discovery." <u>Hill v. City of Minneapolis</u>, No. 12-cv-738 (MJD/AJB), 2012 WL 7761496, at *6 (D. Minn. Dec. 26, 2012), (citing <u>Iqbal</u>, 129 S.Ct. at 1953) <u>report and recommendation adopted</u>, 2013 WL 1104257 (D. Minn. Mar. 18, 2013). Even the <u>Pearson v. Callahan</u> case, upon which Defendant Holton heavily relies for the proposition that the issue of qualified immunity should be determined as early as possible, involved litigation at the summary judgment stage. (<u>See</u>, Defs.' Mem., [Docket No. 32], at 16) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009)). Every case cited by Defendant Holton in support of his argument that he is entitled to qualified immunity involves a Court considering the issue of qualified immunity at the summary judgment stage. (<u>See</u>, Defs.' Mem., [Docket No. 32], at 16–18). Defendant Holton fails to cite to any analogous case where a Court granted, or even considered, the issue of qualified immunity at the motion to dismiss stage. A dismissal of a claim based on the defense of qualified immunity pursuant to a motion brought under Rule 12(b)(6) is appropriate only "when the immunity is established on the face of the complaint." <u>Dornheim v. Sholes</u>, 430 F.3d 919, 926 (8th Cir. 2005). In the present case, however, Defendant Holton's qualified immunity argument is based almost entirely on matters outside of the Complaint and Defendants' subjective characterization of the facts. Accordingly, the Court finds Defendant Holton's qualified immunity argument to be premature, and therefore, other than the brief discussion in this footnote, the Court does not further address his qualified immunity argument at this time.

which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law"). At the time of the incident underlying the present Complaint, Plaintiff was not detained pursuant to any "adjudication of guilt," and therefore, it was not the Eighth Amendment which protected him from "cruel and unusual punishment" at the time he was allegedly tased. See, Id. Rather, as observed above, the United States Supreme Court has held that excessive force claims involving police officers should be analyzed under the Fourth Amendment's "reasonableness" standard. See, Graham v. Connor, 490 U.S. 386, 395 (1989); Saucier v. Katz, 533 U.S. 194, 204–05 (2001).

The alleged conduct of Defendant Holton which Plaintiff contends constitutes "cruel and unusual punishment" is the same conduct Plaintiff alleges in support of his Fourth Amendment excessive force claim. Plaintiff has failed to highlight, and this Court has not found, any case which permitted an Eighth Amendment cruel and unusual punishment claim based on a police officer's use of excessive force before the occurrence of any arrest or "adjudication of guilt."

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks dismissal of Plaintiff's Eighth Amendment cruel and unusual punishment claim as alleged against Defendant Holton, the undersigned recommends Defendants' Motion to Dismiss, [Docket No. 30], be **GRANTED**. The undersigned further recommends that Plaintiff's Eighth Amendment cruel and unusual punishment claim be **DISMISSED without prejudice**.

### c. False Imprisonment Claim

Plaintiff further claims that Defendant Holton's alleged actions constituted "false imprisonment." (See, Compl., [Docket No. 1], at 26). Specifically, Plaintiff alleges that Defendant Holton "violated Plaintiff's Fourteenth Amendment Rights by acting in concert to use or show of authority to restrain Plaintiff, but failed to place Plaintiff under physical arrest" without

"establish[ing] probable cause against Plaintiff pursuant to the Fourth Amendment of the Bill of Rights." (Id.). Plaintiff also alleges that he "spent several days at Defendant St. Luke's Hospital because of the false imprisonment." (Id. at 27). Plaintiff does not specifically articulate the precise conduct he alleges constituted an unreasonable seizure[18] of his person, e.g. his purported detention, the time that allegedly occurred between his being placed in either an ambulance or squad car and his arrival at St. Luke's Hospital, or his being held at St. Luke's Hospital. (See, Id.). In any event, the Court's analysis remains the same regardless of the conduct Plaintiff alleges underlies his unreasonable seizure claim.

To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

Even accepting as true Plaintiff's factual allegation that Defendant Holton tased Plaintiff while Plaintiff was on the ground in compliance with Defendant Holton's instructions, Plaintiff's

---

[18] At the Motions Hearing, Plaintiff's counsel clarified that Plaintiff was not attempting to raised a state law false imprisonment claim. Rather, pursuant to 42 U.S.C. § 1983, Plaintiff raises a claim that the seizure of his person was unreasonable and without probable cause under the circumstances described in his Complaint.

Complaint is devoid of <u>any</u> factual allegation that Defendant Holton himself seized Plaintiff, detained Plaintiff in any way, arrested Plaintiff, or was involved in keeping Plaintiff at St. Luke's Hospital. (<u>See</u>, Compl. [Docket No. 1]).[19] Plaintiff has failed to allege <u>any</u> direct participation by Defendant Holton in any seizure of Plaintiff.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 30], seeks dismissal of Plaintiff's "False Imprisonment" claim as alleged against Defendant Holton, the undersigned recommends Defendants' Motion to Dismiss, [Docket No. 30], be **GRANTED**. The undersigned further recommends that Plaintiff's "False Imprisonment" claim be **DISMISSED without prejudice**.

## VIII. Defendants Gold Cross Ambulance and Johnathan Koop's Motion to Dismiss Plaintiff's Complaint. [Docket No. 39].

Defendant Gold Cross Ambulance and Defendant Johnathan Koop seek dismissal of Plaintiff's claims as alleged against them. (Defs.' Mot. [Docket No. 39]).  Defendants Gold Cross and Koop contend that Plaintiff has failed to state a claim against them upon which relief can be granted because, among other things, Plaintiff has failed to plead sufficient facts alleging their actions were fairly attributable as state action. (Defs.' Mem., [Docket No. 41], at 6–7).

In his Complaint, Plaintiff asserts that Defendant Gold Cross and Defendant Koop "acted under color of state law to deprive [him] of his clearly established and well-settled civil rights by acting in concert to use excessive force in their use of Tasers, unreasonable restraints in the form of both chemical and physical, false imprisonment and planting of false evidence inside Plaintiff's rectum, causing Plaintiff's" injuries "in violation of the Fourth and Fourteenth Amendments."

---

[19] To the extent Plaintiff alleges that Defendant Holton's use of excessive force alone constitutes a seizure of his person, the Court has already explained that "excessive force" claims are properly analyzed under the Fourth Amendment's "reasonableness" analysis. <u>See</u>, <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Saucier v. Katz</u>, 533 U.S. 194, 204–05 (2001). Such conduct would not be analyzed or constitute a separate seizure under the circumstances of the present case.

(Compl., [Docket No. 1], at 21). Plaintiff makes the following purported factual allegation against Defendant Gold Cross: (1) Defendant "Gold Cross Ambulance is a private corporation organized and/or existing under the laws of the State of Minnesota; (2) "Defendant St. Luke's Hospital medical records conflict as to whether Plaintiff was transported to St. Luke's Hospital in [a] squad car or by Gold Cross Ambulance"; (3) Officer Holton reported that Defendant was loaded in a Gold Cross ambulance; and (4) "according to a printout for LE Event #SLP #130101969 for Defendant Gold Cross Ambulance there is no record [sic] Plaintiff being loaded, transported [sic] or his arrival to Defendant St. Luke's Hospital." (Compl., [Docket No. 1], at 3, 8). Plaintiff does not assert <u>any</u> factual allegations pertaining to Defendant Koop.

Based on these factual allegations, Plaintiff asserts claims against Defendants Gold Cross and Koop pursuant to 42 U.S.C. § 1983 for violation of his Fourth, Fifth, and Fourteenth Amendment rights. (Compl., [Docket No. 1], at 21).

As previously discussed, to state a claim pursuant to 42 U.S.C. § 1983, Plaintiff must allege "(1) violation of a constitutional right, (2) <u>committed by a state actor</u>, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>McDonald v. City of Saint Paul</u>, 679 F.3d 698, 704 (8th Cir. 2012) (emphasis added) (quoting <u>Shrum ex rel Kelly v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful . . . ." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999) (citation and marks omitted).

In order to be deemed a state actor, the action of the private actor must be "'fairly attributable to the State,' that is, in this context, that 'the party charged with the deprivation [was] a person who may fairly be said to be a state actor.'" <u>Nichols v. Metropolitan Center for</u>

Independent Living, Inc., 50 F.3d 514, 517 (8th Cir. 1995) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)) (citation omitted). Under 42 U.S.C. § 1983, private parties' conduct may be "fairly attributable to the State" only when they willfully participate in joint activities with a state or its agents. See, Youngblood v. Hy–Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001). In order for a private person who willfully participates in conjunction with a state actor to have acted under color of state law, there must at minimum be a shared purpose to deprive the plaintiff of a constitutional right, namely, "a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451–52 (8th Cir. 1993).

In the present case, Plaintiff has failed to sufficiently alleged that Defendant Gold Cross or Defendant Koop's actions were in any way attributable to the State. Rather, in his Complaint, Plaintiff specifically alleges that Defendant Gold Cross is a "private corporation" and fails to allege any specific action taken by either Defendant Gold Cross or Defendant Koop. Rather, Plaintiff only alleges that there is a discrepancy as to whether Plaintiff was transported to St. Luke's Hospital via a Gold Cross ambulance or a squad car. In fact, in other portions of his Complaint, Plaintiff appears to affirmatively allege that he was transported to St. Luke's Hospital in a squad car; thereby, implicitly alleging that neither Defendant Gold Cross nor Defendant Koop took any action. This does not support Plaintiff's conclusory assertion that Defendant Gold Cross and Defendant Koop were state actors.

Furthermore, Courts have consistently found that ambulance services are not traditionally public functions, nor do they meet the nexus test that ambulance services are a state actor. See, e.g., Grogan v. Blooming Grove Volunteer Ambulance Corps., 768 F.3d 259, 264–65 (2d Cir.

2014). Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts demonstrating that either Defendant Gold Cross or Defendant Koop was acting under color of state law.

Therefore, the Court recommends Defendant Gold Cross and Koop's Motion to Dismiss, [Docket No. 39], be **GRANTED**. It is further recommended that all Plaintiff's 42 U.S.C. § 1983 claims as alleged against Defendants Gold Cross and Koop be **DISMISSED without prejudice**.

## IX.   Defendants St. Luke's Hospital and Johnathan Schultz's Motion to Dismiss. [Docket No. 43].

Defendant St. Luke's Hospital and Defendant Johnathan Schultz seek dismissal of Plaintiff's claims as alleged against them. (Defs.' Mot. [Docket No. 43]).  Defendants St. Luke's Hospital and Dr. Schultz contend that Plaintiff has failed to state a claim against them upon which relief can be granted because, among other things, Plaintiff here too has failed to plead sufficient facts demonstrating their actions were fairly attributable as state action. (Defs.' Mem. [Docket No. 46]).

Plaintiff alleges he was provided medical treatment in the St. Luke's Hospital emergency room by Dr. Schultz, as well as, other unnamed members of the St. Luke's Hospital staff. (Compl. [Docket No. 1]). Plaintiff conclusorily alleges that the medical records from St. Luke's Hospital, including those generated by Defendant Schultz, "were written only after consultation with police . . . ." (Id. at 9). Plaintiff further alleges that he was "fully sedated" in "four point restraints," but that when he "came out of sedation hospital staff considered him agitated and re-sedated him.' (Id. at 13). Plaintiff asserts this was done "in an attempt to block his memory of illegal Tasing, as there was no medical reason for the administration of these drugs that cause amnesia so to [sic] comfort patients in surgery." (Id.). Plaintiff also alleges that "Defendant St. Luke's Hospital medical staff obscured [his] medical records." (Id.).

44

Plaintiff then conclusory alleges that "St. Luke's Hospital Defendants were state actors acting under color of state law because for the purposes of 42 U.S.C. §§ 1983, 1985 and 1986 because [sic] they conspired and acted in concert with police to use unnecessary excessive force by the way of chemical and physical restraints on Plaintiff. The St. Luke's Hospital Defendants acted as willful participants in joint activity with Police Defendants that put Plaintiff at risk medically and obscured Plaintiff's medical history." (Id. at 19).

Based on these allegations, Plaintiff asserts claims against St. Luke's Hospital and Dr. Johnathan Shultz pursuant to 42 U.S.C. § 1983 for Monell liability, as well as, violation of his Fourth, Fifth, and Fourteenth Amendment rights. (Compl., [Docket No. 1], at 22, 24). Regarding his claim that Defendant St. Luke's Hospital and Defendant Shultz violated his Fourth, Fifth, and Fourteenth Amended rights, Plaintiff generically alleges that "St. Luke's Hospital[,] Dr. Johnathan Schultz and other unknown/unnamed hospital staff, . . . acted under the color of state law to deprive Plaintiff of his clearly established and well-settled civil rights by acting in concert to use excessive force in their use of Taser"; by "unreasonable" use of "chemical and physical" restraints; by "false[ly] imprison[ing]" him; by "planting . . . false evidence inside [his] rectum"; by causing his injuries; and "by failing to prevent each other from violating [his] constitutional rights." (Id. at 21). Regarding his Monell claim against St. Luke's Hospital, Plaintiff conclusorily alleges that "Defendant St. Luke's Hospital had and presently has customs, policies, practice and procedures of negligent and inadequate hiring, training, supervising and retaining staff" which "gave rise to [the] constitutional violations set forth" in Plaintiff's Complaint. (Id. at 24). Plaintiff further asserts that "Defendant St. Luke's Hospital condoned, ratified, approved and/or otherwise acquiesced in the use of excessive force against and improper restraint of individuals including Plaintiff; and had and presently have [sic] customs, policies, practices and procedures that condone the use of

excessive force and improper restraint such as that used on and directly resulting in [his] injuries . . . ." (Id.).

For the reasons previously discussed, to successfully assert any such 42 U.S.C. § 1983 claims, Plaintiff must at the outset plead sufficient facts demonstrating that Defendants Dr. Schultz and St. Luke's Hospital's actions, in rendering medical treatment to Plaintiff, were fairly attributable to the state. See, West v. Atkins, 487 U.S. 42, 48 (1988).

In the present case, even accepting all of Plaintiff's factual allegations as true, Plaintiff has failed to sufficiently plead facts that would support a reasonable inference that Defendant St. Luke's Hospital or Defendant Shultz were state actors; were in any way engaged in state action; or entered into any "mutual understanding" or "meeting of the minds" with any state actor in an effort to deprive Plaintiff of his constitutional rights. Plaintiff also specifically alleges that St. Luke's Hospital is a "non-profit corporation duly organized and/or existing under the laws of the State of Minnesota." (Compl., [Docket No. 1], at 3). The conclusory allegations in the Complaint do not support Plaintiff's blanket assertion that Defendant St. Luke's Hospital or Defendant Dr. Schultz were state actors.

Indeed, Plaintiff's conclusory allegations that St. Luke's Hospital staff "conferred" with an unnamed Duluth Police Officer who accompanied Plaintiff to the emergency room in assessing the condition of Plaintiff's health does not demonstrate a "meeting of the minds" between the St. Luke's Hospital staff and the Duluth Police Officers in an effort to deprive Plaintiff of his constitutional rights. Other Courts have reached similar conclusion based on analogous circumstances.

For example, in Sain v. Geske, the Court dismissed a plaintiff's Section 1983 claim against defendants who were private corporations where the plaintiff failed to allege that the defendants

were engaged in state action. Sain v. Geske, No. 07-cv-4203 (MJD/AJB), 2008 WL 2811166 (D. Minn. July 17, 2008). In Sain, the plaintiff did not allege any facts that would support a claim that two private defendants were acting under color of state law at any time. Id. at *13. Rather, the plaintiff only alleged that the private defendants were "in cahoots" with the government defendants. Id. The Court ultimately held that the mere conclusory allegation that private defendants had been in contact with the government defendants was insufficient to support a claim that the private defendants were acting under color of state law. Id. Therefore, the Sain Court dismissed the plaintiff's Section 1983 claim. Id.

Similar to Sain, supra, Plaintiff here merely alleges that Defendant St. Luke's Hospital and Defendant Shultz had been in communication or "conferred" with law enforcement at the time Plaintiff was initially brought in for medical treatment. This mere initial conclusory contact, however, is insufficient to plead a viable claim under 42 U.S.C. § 1983. See, Sain, 2008 WL 2811166, at *14.

Therefore, the undersigned recommends that Defendant St. Luke's Hospital and Defendant Johnathan Shultz's Motion to Dismiss, [Docket No. 43], be **GRANTED**. It is further recommended that Plaintiff's claims alleged against Defendant St. Luke's Hospital and Defendant Johnathan Shultz be **DISMISSED without prejudice**.

## X.    Conclusion

Therefore, based on the foregoing reasons, all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant St. Louis County Sheriff's Department's Motion to Dismiss, [Docket No. 24], be **GRANTED**;

2.  Plaintiff's Complaint as alleged against Defendant St. Louis County Sheriff's Department be **DISMISSED with prejudice**.

3.  Defendants City of Duluth, City of Duluth Police Department, Josiah Bellows, Andrew Graves, Gayle Holton, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel's Motion to Dismiss, [Docket No. 30], be **GRANTED in part and DENIED in part**, as set forth above;

4.  Plaintiff's Complaint as alleged against Defendant City of Duluth Police Department be **DISMISSED with prejudice**;

5.  Plaintiff's Complaint as alleged against Defendant City of Duluth, Josiah Bellows, Andrew Graves, Carla Josephson, Benjamin Nordskog, Steven Ring, June Sackette, Todd Simmons, and Christopher Verhel be **DISMISSED without prejudice**;

6.  Plaintiff's Eighth Amendment "cruel and unusual punishment" claim as alleged against Defendant Holton be **DISMISSED without prejudice**;

7.  Plaintiff's "False Imprisonment" claim as alleged against Defendant Holton be **DISMISSED without prejudice**;

8.  Defendants Gold Gross Ambulance, Johnathan Koop, and Pete Reynolds' Motion to Dismiss, [Docket No. 39], be **GRANTED**;

9.  Plaintiff's Complaint as alleged against Defendants Gold Gross Ambulance, Johnathan Koop, and Pete Reynolds be **DISMISSED without prejudice**;

10. Defendants Johnathan Shultz and St. Luke's Hospital's Motion to Dismiss, [Docket No. 43], be **GRANTED**;

11. Plaintiff's Complaint as alleged against Defendants Johnathan Shultz and St. Luke's Hospital be **DISMISSED without prejudice**; and

**12.** The sole remaining claim in the present case is Plaintiff's 42 U.S.C. §1983 excessive force

claim against Defendant Holton.


Dated: November 19, 2019                         s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE



**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).